## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

————————————————————————

|  |  |  |
|---|---|---|
| **GEORGE JOHNSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **C.A. No. 06-1453 (RCL)** |
| **v.** | ) | |
| | ) | |
| **SERGEANT BREDET WILLIAMS, *et al.*** | ) | |
| | ) | |
| **Defendants.** | ) | |

———————————————————————— )

### DEFENDANTS' MOTION IN LIMINE

Defendants, by and through their undersigned counsel and pursuant to Fed. R. Civ. P. 16(c), respectfully request that the Court exclude certain claims from trial in this matter as Plaintiff lacks sufficient evidence to support such claims. Defendants refer the Court to the attached Memorandum of Points and Authorities in support of their Motion.

### RULE 7.1(m) CERTIFICATE

Pursuant to LCvR 7(m), undersigned counsel conferred with counsel for Plaintiff on August 22, 2008, regarding the issues raised in the instant Motion In Limine. Plaintiff does not consent to the relief sought by Defendants.

Dated this 27th day of August, 2008.

Respectfully submitted,

PETER J. NICKLES
Acting Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General, Civil Litigation Division

*/s/ Toni Michelle Jackson*
TONI MICHELLE JACKSON [453765]
Chief, General Litigation Section III

*/s/ Vanessa E. Atterbeary*
VANESSA E. ATTERBEARY [478070]
Assistant Attorney General
441 Fourth Street, N.W., Suite 6S-070
Washington, D.C. 20001
(202) 727-9624
(202) 727-3625 (fax)
Email: Vanessa.Atterbeary@dc.gov


*/s/ Shana L. Frost*
SHANA L. FROST [45802]
Assistant Attorney General
441 Fourth Street, N.W., 6th Floor South
Washington, D.C. 20001
(202) 727-9624
(202) 727-3625 (fax)
Email: Shana.Frost@dc.gov

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                                  )
**GEORGE JOHNSON,**                )
                                                  )
                        **Plaintiff,**         )
                                                  )          **C.A. No. 06-1453 (RCL)**
            **v.**                               )
                                                  )
**SERGEANT BREDET WILLIAMS,** *et al.*  )
                                                  )
            **Defendants.**                 )
_____ )

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**DEFENDANTS' MOTION IN LIMINE**

Defendants, by and through their undersigned counsel and pursuant to Fed. R. Civ. P. 16(c), respectfully request that the Court exclude certain claims from trial in this matter. As demonstrated herein, Plaintiff lacks sufficient evidence to support certain claims; thus, Plaintiff should be precluded from presenting such claims to the jury.

**I.        FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff filed the above-captioned matter in the Superior Court of the District of Columbia. Defendants timely removed the matter to this Court. In his Complaint, Plaintiff alleges that on December 21, 2005, Sergeant Bredet Williams and other officers of the District of Columbia Metropolitan Police Department conducted a traffic stop of Plaintiff's vehicle at 13th Street and Piney Branch Road, NW. *See* Compl. ¶¶ 5-7. Plaintiff states that during the traffic stop, he and his passenger were detained at gunpoint for approximately fifteen minutes. Compl. ¶ 11. He alleges that he and his companion were repeatedly told "to keep their hands up or they would be shot." Compl. ¶ 10. Plaintiff acknowledges that the officers were acting on the basis of an anonymous tip that

reported that a man driving a vehicle matching Plaintiff's, with tag numbers nearly identical to Plaintiff's, was reported to be brandishing a gun.  Compl. ¶ 13.  After a pat-down of Plaintiff and his companion, as well as when a consensual search of the vehicle, revealed no weapon, Plaintiff and his passenger were informed that they were free to leave.

Approximately five days after the incident, Plaintiff checked himself into the hospital complaining of chest pains, and eventually filed the above-captioned matter against the District and Sergeant Williams, asserting claims of violation of constitutional rights, false arrest, assault, and negligent training and supervision.  *See* Compl. ¶¶ 5, 17. Discovery is closed and this matter is set for trial.  As shown herein, however, Plaintiff lacks sufficient evidence to prove any of his claims.  Plaintiff should therefore be precluded from presenting any of his claims to the jury.

## II.    LEGAL STANDARD

"A key purpose of motions *in limine* is to resolve specific evidentiary issues in advance of trial."  *United States ex rel. El-Amin v. George Washington Univ.*, 533 F. Supp. 2d 12, 19 (D.D.C. 2008).  Additionally, Fed. R. Civ. P. 16(c)(2) permits the Court to consider a number of options at the pretrial conference that will facilitate "the just, speedy, and inexpensive disposition of the action."  Fed. R. Civ. P. 16(c)(2)(P).

First among the issues the Court may consider and "take appropriate action on" is "formulating and simplifying the issues, and eliminating frivolous claims or defenses." Fed. R. Civ. P. 16(c)(2)(A) *see also Tomasello v. Rubin,* 920 F. Supp. 4 (D.D.C.) (Court granted in part motion *in limine* requesting that the Court dismiss certain claims and limit the evidence to be presented to the jury).  The Court may also order the exclusion of

"unnecessary proof and cumulative evidence." Fed. R. Civ. P. 16(c)(2)(D). Finally, the Court may "order the presentation of evidence early in the trial on a manageable issue that might, on the evidence, be the basis for a judgment as a matter of law under Rule 50(a) or a judgment on partial findings under Rule 52(c)."

### III.    ARGUMENT

#### A. The Court Should Preclude Plaintiff From Presenting to the Jury His Claim of Violation of Civil Rights by the District of Columbia as Plaintiff Has No Evidence to Support This Claim

In Counts I and II of his Complaint, Plaintiff alleges violations of his Fourth Amendment rights related to unreasonable seizure and excessive force. *See* Compl. ¶¶24, 29. As a matter of law, Plaintiff cannot prevail on these claims at trial. Plaintiff has wholly failed to provide *any* evidence demonstrating a custom or practice of the District causing Plaintiff's alleged injury.

It is well-settled that "Congress did not intend municipalities to be held liable [for constitutional torts pursuant to § 1983] unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. Department of Soc. Servs.*, 436 U.S. 658, 691 (1978) (rejecting liability for municipalities and municipal officials under *respondeat superior* theory). Therefore, Section 1983 represents the vehicle that a party must use in order to assert a claim against a municipality for an alleged violation of constitutional rights.

To prove a Section 1983 claim that meets the *Monell* requirements, Plaintiff must show that the municipality adopted an unconstitutional policy, such as a statute or regulation, that violates the constitutional rights of the individual, *Monell*, 436 U.S. at 694, or a practice "so permanent and well settled as to constitute a 'custom or usage' with

the force of law." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-68 (1970).  Here, Plaintiff cannot identify any unconstitutional statute or policy adopted by the District. Furthermore, Plaintiff has not alleged that a named defendant has District of Columbia policy-making authority that could satisfy the requirements under *Monell*.[1]  Thus, Plaintiff should be precluded from presenting a claim to the jury that the District of Columbia maintains any statutes, regulations or policies that violate an individuals' constitutional rights.

A plaintiff may also establish a *de facto* municipal policy by showing an unconstitutional decision or action taken by an official policymaker of the municipality. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986).  In order to support such a claim, the Plaintiff must demonstrate the existence of an official decision maker with "final authority to establish municipal policy with respect to the action ordered."  *Id.* at 481.  Here, Plaintiff lacks any evidence to show that any official policymaker of the District of Columbia took or sanctioned any action that violated Plaintiff's constitutional rights; thus; Plaintiff should be precluded from presenting a claim that the District of Columbia violated his constitutional rights by virtue of an unconstitutional decision or action taken by an official policymaker of the government.[2]

A plaintiff may also attempt to prove his Section 1983 claim by demonstrating that the municipality was deliberately indifferent to an obvious need to train its employees.  To satisfy such a standard, a plaintiff must provide evidence that officials knew or should have known of a specific training need, that failure to address that need

---

[1] In the District, the Mayor and the Chief of Police are policymakers for the Metropolitan Police Department (MPD).  See D.C. Code § 5-101.03 (2001 edition); DCMR 6A, § 800.3. In the instant matter, the record is devoid of any evidence regarding any conduct on the part of either the Mayor or the Chief of Police.

[2] Again, Plaintiff has failed to allege wrongdoing on the part of the Mayor or Chief of Police.

was likely to result in violation of individual constitutional rights, and that the officials were deliberately indifferent to the need for such training.  *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989).  The fact that one officer may not have been adequately trained is insufficient, in and of itself, to impose liability on the District.  *Id.* at 390-91.  Rather, Plaintiff must show that officers "so often violate constitutional rights that the need for further training must have been plainly obvious to the city policymakers."  *Id.* at 390, n.10.  Moreover, Plaintiff must prove that the deliberate indifference to the need to train actually caused the constitutional injury in question.  *City of Oklahoma v. Tuttle*, 471 U.S. 808, 823 (1985).  Plaintiff's burden in this respect is significant; he must show that "*deliberate* action attributable to the municipality itself is the 'moving force' behind the plaintiff's deprivation of federal rights."  *Board of County Comm'rs v. Brown*, 520 U.S. 397, 400 (1997) (quoting *Monell*, 436 U.S. at 694; emphasis in original).  "A showing of simple or even heightened negligence will not suffice" to establish municipal liability for constitutional torts.  *Brown*, 520 U.S. at 407.

Here, Plaintiff lacks any evidentiary basis that would permit him to present a claim to the jury that the District of Columbia is deliberately indifferent to an obvious need to train its police officers, and that such deliberate indifference actually caused the Plaintiff some injury.[3]  The District specifically asked Plaintiff to identify the basis for his claims in Count I (unlawful seizure) and Count II (excessive force) of his Complaint,

---

[3] To prevail on this basis, plaintiff would have to identify a particular deficiency in the MPD's training program and prove that the identified deficiency was the actual cause of Plaintiff's alleged constitutional injury.  *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989).  As discussed in further detail in connection with Plaintiff's negligence claim, Plaintiff cannot hope to meet this burden without expert testimony.  *See Smith v. District of Columbia, et al.*, 882 A.2d 778, 792-793 (D.C. App. 2005) (requiring expert testimony on claims of failure to train, supervise and discipline police officers); *Holder v. District of Columbia*, 700 A.2d 738, 741-742 (D.C. App. 1997) (stating that police use of force is an issue beyond the ken of the average jury).

including any evidence Plaintiff had to support his claim and any witnesses Plaintiff intended to call.  *See* Ex. I (Defs.'s Int. 14 & 15).  Plaintiff responded by referring to the Complaint itself and a factual recitation of the events he provided in response to other Interrogatories.  Ex. I (Pl.'s Resp. to Int. 14 & 15).  Plaintiff has failed to produce any evidence that could support a Section 1983 claim against the District.  Without a proper evidentiary basis to hold the District liable for these constitutional torts, Plaintiff should be prohibited from presenting his claims to the jury.

### B.  The Wrongdoing alleged in the Complaint Does Not Rise to the Level of a Constitutional Violation (Counts I and II)

The Fourth Amendment of the United States Constitution protects an individual's right to be free from unreasonable search and seizure.  A police officer can arrest an individual or seize property only if there is probable cause that a law has been broken.  *Michigan v. Summers*, 452 U.S. 692, 693 (1981).  In his Complaint, Plaintiff does not allege that a named individual defendant had District of Columbia policymaking authority that could satisfy the requirements of *Monell*.  436 U.S. at 694; *see also Triplett v. District of Columbia*, 108 F.3d 1450, 1453 (D.C. Cir. 1997).

In *Triplett*, an inmate plaintiff sued two correctional officers and the District of Columbia for the officers' use of excessive force.  The court held that the plaintiff could only succeed on his § 1983 claims against the District if he could "show fault on the part of the city based on a course its policymakers consciously chose to pursue."  *Id.* (*citing Carter v. District of Columbia*, 795 F.2d 116, 122 (D.C. Cir. 1986)).  In holding that the plaintiff had made no such showing, the court emphasized that the plaintiff's allegation that certain "supervisors" were involved in the incident was insufficient.  The court wrote that:

6

> "If the mere exercise of discretion by an employee could give rise to a
> constitutional violation, the result would be … *respondeat superior*
> liability," which *Monell* had rejected.

*Id.* (*citing St. Louis v. Praprotnik*, 485 U.S. 112, 126 (1988)).  Finding "no one in this case's cast of characters who could possibly be said to hold 'final policymaking authority' regarding the use of force in restraining prisoners," the court reversed the trial court's judgment of municipal liability.  *Id.* at 1453-54.

Here, the Plaintiff's Complaint contains similar deficiencies.  The Plaintiff has not sued or alleged that any individual had policymaking authority.  Plaintiff has brought suit against Sergeant Williams alleging that she was a "supervisor" during the incident.  This allegation, however, does not give rise to a Fourth Amendment claim of excessive force. Without a factually supported allegation that the alleged constitutional violations were conducted by a District policymaker, the plaintiff's §1983 claim against the District must be dismissed.[4]

### C.  The Court Should Preclude Plaintiff From Presenting to the Jury His Claim that Sergeant Williams Violated His Constitutional Rights As Sergeant Williams Is Entitled to Qualified Immunity for Her Actions

Regarding Plaintiff's claim that Sergeant Williams violated Plaintiff's constitutional rights, it is well-settled that government officials enjoy a qualified immunity from constitutional and statutory claims against them.  *Saucier v. Katz*, 533 U.S. 194, 200 (2001); *Lederman v. United States*, 291 F.3d 36 (D.C. Cir. 2002).  "The immunity is not simply from damages but from having to participate in the proceedings."

---

[4] Plaintiff did not conduct a 30(b)(6) deposition in this matter.

*Kalka v. Hawk,* 215 F.3d 90, 94 (D.C. Cir. 2000), citing *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985).

"A court evaluating a claim of qualified immunity 'must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation.'" *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (quoting *Conn v. Gabbert*, 526 U.S. 286 (1999)).

Plaintiff has not articulated a deprivation of his constitutional rights by Sergeant Williams. Further, even if the plaintiff could allege a constitutional violation, an official cannot be held personally liable for conduct he or she would not have reasonably known was unconstitutional. *Saucier,* 533 U.S. at 202. The Supreme Court explained that "'the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Additionally, the Supreme Court has stated that "[i]t is important to emphasize that this inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004), quoting *Saucier*, 533 U.S. at 201. Finally, if the particular right alleged to have been violated was clearly established, it is then necessary to inquire as to whether the officer's conduct was objectively unreasonable, while "acknowledge[ing] that reasonable mistakes can be made as to the legal constraints on particular police conduct." *Saucier,* 533 U.S. at 205.

Here, Plaintiff's allegations of constitutional violations are two-fold in that he asserts unlawful seizure and excessive force. Compl. ¶¶ 21-30. First, as demonstrated below, Plaintiff lacks sufficient evidence to establish that Sergeant Williams violated any constitutional right afforded Plaintiff. Moreover, even if Plaintiff could make such an evidentiary showing, Sergeant Williams is entitled to qualified immunity under both theories set forth by Plaintiff.

### 1. Sergeant Williams Is Entitled to Qualified Immunity for Plaintiff's Claim of Unlawful Seizure

Plaintiff asserts that his Fourth Amendment rights were violated when he was unlawfully seized by Sergeant Williams. Compl. ¶¶ 21-25. "'[I]n determining whether a detention has occurred within the meaning of the Fourth Amendment, the Supreme Court has recognized three types of police-citizen encounters; (1) a full-scale arrest, which must be supported by probable cause, (2) a brief investigatory detention which must be supported by reasonable suspicion, and (3) a brief police-citizen encounter, which requires no justification.'" *Cotton v. District of Columbia,* 541 F. Supp. 2d 195, 202 (D.D.C. 2008) (quoting *Polk v. District of Columbia,* 121 F. Supp. 2d 56, 64 (D.D.C. 2000)). Plaintiff was not arrested so the 2nd and 3rd types are at issue here.

### a. Defendant Williams had a reasonable suspicion that Plaintiff was the subject of the anonymous tip as he and his vehicle fit the description of the information supplied in the tip.

Here, Sergeant Williams' actions, as described by Plaintiff, constitute a *Terry* stop, which occurs "when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *Terry v. Ohio,* 392 U.S. 1, 19 n.16 (1968). According to the facts alleged in Plaintiff's Complaint, Plaintiff was detained for

approximately fifteen minutes while the officers checked Plaintiff's driver's license and registration.  Compl. ¶ 11.  Plaintiff acknowledges that the officers were acing on an anonymous tip that an individual traveling in a vehicle that matched Plaintiff's had been reported brandishing a handgun.  Compl. ¶ 13.  After a pat-down of Plaintiff and his passenger, and a consensual search of Plaintiff's vehicle revealed no weapon, Plaintiff and his companion were free to leave.  The fact that the officers had their weapons drawn does not, in and of itself, turn the stop into an arrest.  *See Baker v. Monroe Twp.,* 50 F.3d 1186, 1193 (3rd Cir. 1995); *United States v. Trullo,* 809 F.2d 108, 113 (1st Cir. 1987).

To justify a *Terry* stop, the officers here only needed a reasonable, articulable suspicion of criminal conduct.  *Cotton,* 541 F. Supp. 2d at 203 (citing *Illinois v. Wardlow,* 528 U.S. 119, 123 (2000); *Terry,* 392 U.S. at 30).  "'*Terry* stops require only that officers have a minimal level of objective justification.'"  *Id.* (quoting *United States v. Goddard,* 491 F.3d 457, 460 (D.C. Cir. 2007) and *INS v. Delgado,* 466 U.S. 210, 217 (1984)) (internal quotation omitted).  "Because reasonable suspicion is a less demanding standard than the probable cause required for an arrest, it 'can arise from information that is less reliable than that required to show probable cause,' including an anonymous tip."  *United States v. Wheat,* 278 F.3d 722 (8th Cir. 2001) (quoting *Alabama v. White,* 496 U.S. 325, 330 (1990)).

Here, the anonymous tip that provided the basis for the stop contained sufficient indicia of reliability to justify the stop.  *Cf. Florida v. J.L.,* 529 U.S. 266 (2000) (holding that an anonymous tip that did not provide any information with which the police could test the informant's credibility could not justify a *Terry* stop).  First, and most importantly, the informant reported an ongoing criminal activity of a potentially

10

dangerous nature in that the caller indicated that a man was waving a gun out the window

of his vehicle.  "Every circuit to consider the question . . . has distinguished *J.L.* when the

tip is not one of general criminality, but of an ongoing emergency . . . or very recent

criminal activity."  *United States v. Hicks,* 531 F.3d 555, 558-59 (7th Cir. 2008), citing

*United States v. Brown,* 496 F.3d 1070, 1077 (10th Cir. 2007); *United States v. Elston,*

479 F.3d 314, 319 (4th Cir. 2007); *United States v. Drake,* 456 F.3d 771, 775 (7th Cir.

2006); *United States v. Terry-Crespo,* 356 F.3d 1170, 1176 (9th Cir. 2004); *Anthony v.

City of New York,* 339 F.3d 129, 136-37 (2d Cir. 2003); *United States v. Holloway,* 290

F.3d 1331, 1338-39 (11th Cir. 2002); *United States v. Valentine,* 232 F.3d 350, 354 (3d

Cir. 2000).

    In this case, the caller reported more than just the possession of a firearm, which

was reported in *J.L.*; here, the caller described actually witnessing at the time of the call

the suspect brandishing a firearm while traveling in a specific vehicle.[5]  *Cf., J.L.,* 529

U.S. at 272 (noting that the tip at issue "does not show that the tipster has knowledge of

concealed criminal activity.  The reasonable suspicion here at issue requires that a tip be

reliable in its assertion of illegality . . .").

    The caller provided sufficiently detailed information, including the make of the

vehicle (Ford), the model of the vehicle (Explorer), the color of the vehicle (green), the

direction of the vehicle (seen at 13th and Decatur Street, traveling northbound), and a

license plate of the vehicle (Maryland tag, 658M037) to lend credibility to the report.  Ex.

II.  It was also clear from the call that the caller was reporting something that he was

observing at the moment, and not information that was stale or from another source.

---

[5] For the Court's convenience, a transcription of the 911 call is attached hereto as Exhibit II.  A
copy of the 911 recording will be made available to the Court if the Court so wishes.

*United States v. Valentine,* 232 F.3d 350 (3d Cir. 2000) (finding contemporaneous report to police to be more credible). Moreover, seconds after the lookout was given, the officers indeed spotted a green Ford Explorer traveling northbound on 13th Street at Piney Branch Road (slightly over a mile from where the caller reported it still traveling in the same direction as reported) with Maryland tag 568M037 (slightly different from that reported by the dispatcher).

Under the circumstances Plaintiff presents, the officers had received information over the police radio that an individual driving the same type and color vehicle Plaintiff was driving, in the same general vicinity in which Plaintiff was traveling, was armed with a dangerous, illegal weapon. Due to the potentially dangerous situation the caller was reporting, as well as the fact that the nature of the call (that the suspect was traveling in his vehicle) the officers did not have the luxury of being able to conduct an investigation into the veracity of the call itself; rather, the officers were required to take quick action to investigate the reported criminal activity. *See Terry-Crespo,* 356 F.3d at 1176 ("Police delay while attempting to verify an identity or seek corroboration of a reported emergency may prove costly to public safety and undermine the 911 system's usefulness.").[6] Thus, Plaintiff lacks sufficient evidence to present a claim to the jury that Sergeant Williams unlawfully seized Plaintiff.

---

[6] It is also important to note that the caller here did not refuse to give his name or his number, he simply was not asked for it. *See* Ex. II. While the *J.L.* Court expressed "concern that sanctioning stops promoted by anonymous tips might 'enable any person seeking to harass another to set in motion an intrusive, embarrassing police search,'" *Hicks,* 531 F.3d at 560 (quoting *J.L.,* 120 S. Ct. at 1379-80), the *Hicks* Court observed that "any body of law requiring 911 operators to carefully make credibility determinations would unacceptably delay the necessary responses to *all* emergency calls, including genuine ones." *Id.* at 561 (emphasis in original). In a case such as this, where the tip involves criminal activity emanating from a moving vehicle, an immediate police response is required to investigate the alleged criminal acts before the opportunity is lost or

**b.** **Alternatively, Defendant Williams' actions required no justification.**

However, even if Sergeant Williams did not have sufficient information to support a finding of reasonable suspicion to stop Plaintiff, and even if Plaintiff's rights in this regard were clearly established at the time of Plaintiff's stop, *see Saucier,* 533 U.S. at 202, Sergeant Williams is still entitled to qualified immunity as her actions were not objectively unreasonable and, therefore, justified.

When the officers were given a lookout for a green Ford Explorer that matched the description of Plaintiff's vehicle, Sergeant Williams and the other officers were unaware that the dispatch was based on an anonymous tip. Indeed, "efficient law enforcement requires – at least for the purposes of determining the civil liability of individual officers – that police be permitted to reply upon information provided by the dispatcher." *Feathers v. Aey,* 319 F.3d 843, 851 (6th Cir. 2003). Moreover, the Supreme Court has noted that in a case where an officer makes a stop in reliance on information posted in a "wanted flyer" or other type of police bulletin that was issued without reasonable suspicion, "then a stop in the objective reliance upon it violates the Fourth Amendment. In such a situation, of course, the officers making the stop may have a good-faith defense to any civil suit." *United States v. Hensley,* 469 U.S. 221, 232 (1985) (citations omitted).

Here, Plaintiff cannot establish that Sergeant Williams' actions were objectively unreasonable, and the fact that the stop of Plaintiff revealed no illegal activity on Plaintiff's part does not overcome Sergeant Williams' right to qualified immunity. "Unfortunate as it may sometimes seem, the Constitution does not guarantee that only the

---

the driver can continue on his way to commit another assault – or worse – with the handgun he purportedly was brandishing.

guilty will be subject to searches and seizures." *Alexander v. Haymon,* 254 F. Supp. 2d 820, 835 (S.D. Ohio 2003) (citing *Baker v. McCollan,* 443 U.S. 137, 145 (1979)). Accordingly, Sergeant Williams should be granted qualified immunity on Plaintiff's claim of unlawful seizure.

## 2. Sergeant Williams Is Entitled to Qualified Immunity for Plaintiff's Claim of Excessive Force

The Supreme Court has recognized that "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor,* 490 U.S. 386, 396 (1989) (citing *Terry*, 392 U.S. at 22-27). Thus, to determine whether an officer has violated a right protected by the Fourth Amendment, courts will apply a standard of objective reasonableness in light of the facts and circumstances confronting the officer. *Graham*, 490 U.S. at 396; *Saucier*, 533 U.S. at 202.

To make the inquiry of the "'reasonableness' of a particular use of force" the Court must judge the officer's actions "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham,* 490 U.S. at 396 (citing *Terry,* 392 U.S. at 20-22). Moreover, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments -- in circumstances that are tense, uncertain, and rapidly evolving -- about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97. The Supreme Court has recognized that "'[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers' . . . violates the Fourth Amendment." *Graham*, 490 U.S. at 396 (quoting *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir. 1973)).

Here, the evidence that Plaintiff would submit to the jury is that he was asked to exit his vehicle by officers with their guns drawn, and was searched. Thus, there was no actual force used against Plaintiff, but rather the threat of force by the officers' brandishing of their service weapons. As noted, some force, or threat thereof, is usually necessary to make a stop. In light of the fact that the officers were informed that the driver of Plaintiff's vehicle had been waving a pistol out of the car, Sergeant Williams and the other officers were justified in removing their service weapons for their own safety and the safety of others.

Plaintiff has offered no evidence of any actual physical force used against him, and has only claimed that he and his vehicle (with his consent) were searched. The facts that Plaintiff proffers simply cannot establish that Sergeant Williams used any force against Plaintiff, and any force or threat of force by Sergeant Williams was objectively reasonable in light of the fact that she had a reasonable belief that Plaintiff possessed a gun. Thus, Sergeant Williams is entitled to qualified immunity on Plaintiff's claim of excessive force.

### D.  The Court Should Preclude Plaintiff from Presenting His Claim of False Arrest to the Jury

"For the plaintiff to succeed on [his] false arrest . . . claim under District of Columbia tort law, [he] must prove (1) that [the officers] detained or restrained the plaintiff against [his] will within the boundaries fixed by [the officers], and (2) the unlawfulness of the restraint." *Cotton,* 541 F. Supp. 2d at 205 (citing *Edwards v. Okie Dokie, Inc.*, 473 F. Supp. 2d 31, 44 (D.D.C. 2007); *Korama v. United States,* 628 F. Supp. 949, 952 (D.D.C. 1986)). "Under District of Columbia law, a police officer may justify an arrest by demonstrating that '(1) he or she believed, in good faith, that his or

her conduct was lawful, and (2) this belief was reasonable.'" *Gerry Scott v. District of Columbia*, 101 F.3d 748, 754-55 (D.C. Cir. 1996), *cert. denied*, 520 U.S. 1231 (1997) (citations omitted).

As demonstrated above, Plaintiff was legitimately stopped for investigative purposes as the dispatcher broadcast a report that an individual driving a vehicle matching the description of Plaintiff's vehicle was waving a gun out the window. Plaintiff lacks evidence to show that the restraint was unlawful in light of this report. Moreover, the officers had a legitimate basis for conducting the brief investigatory stop in light of the information they received over the dispatch regarding the driver of the vehicle moments before spotting Plaintiff's car. Based on this information, which the officers had no way of knowing was from an anonymous tip, and as demonstrated in the previous section, the officers' belief that their conduct was justified is reasonable as a matter of law. Accordingly, Plaintiff should be precluded from presenting his false arrest claim to the jury.

### E.  The Court Should Preclude Plaintiff from Presenting to the Jury His Claim of Assault as the Officer's Actions Were Privileged

District of Columbia law defines an assault as "an intentional and *unlawful* attempt or threat, either by words or acts, to do physical harm to the plaintiff." *Etheridge v. District of Columbia,* 635 A.2d 908, 916 (D.C. 1993) (emphasis added). It is well-settled that police officers may use reasonable force in carrying out their duties, "provided that the means are not 'in excess of those which the actor reasonably believes to be necessary.'" *Holder v. District of Columbia,* 700 A.2d 738, 741 (D.C. 1997) (quoting *Etheridge,* 635 A.2d at 916); *see also Smith v. District of Columbia,* 882 A.2d 778, 787 (D.C. 2005); *Jackson v. District of Columbia,* 412 A.2d 948, 955-56 (D.C.

1980). When determining whether the privilege applies, the circumstances must be considered from the perspective of the officer at the time of the arrest. *Etheridge,* 635 A.2d at 916 (citing *Graham,* 490 U.S. at 396-97).

Here, Plaintiff alleges that the officers had their guns drawn and pointed at him during the traffic stop. The officers received information from their dispatcher that Plaintiff was armed. Thus, considering the circumstances from the perspective of the officers, who had stopped an individual reported to be armed, it was reasonable for them to have their weapons drawn to protect themselves and others from an armed individual.

### F. The Court Should Preclude Plaintiff from Presenting to the Jury His Claim of Negligent Training and Supervision

"Potential recovery in tort for negligent hiring or retention of an employee is not based on respondeat superior, but rather on proof of negligence on the part of the employer himself." *Schechter v. Merchants Home Delivery, Inc.*, 892 A.2d 415, 431 (D.C. 2006), citing *Fleming v. Bonfin*, 80 A.2d 915, 917 (D.C. 1951). "To establish a cause of action for negligent supervision, a plaintiff must show: that the employer 'knew or should have known its employee behaved in a dangerous or otherwise incompetent manner, and that the employer, armed with that actual or constructive knowledge, failed to adequately supervise the employee.'" *Phelan v. City of Mt. Ranier*, 805 A.2d 930, 937-38 (D.C. 2002), quoting *Giles v. Shell Oil Corp.*, 487 A.2d 610, 613 (D.C. 1985).

In their Interrogatories to Plaintiff, Defendants asked Plaintiff to:

Describe in detail the basis of your claim against Defendant District of Columbia for negligent training and supervision, including but not limited to, the factual support you intend to introduce to prove this claim; the evidence to support your claim; the witnesses you intend to call to support your claim and the substance of their likely testimony; and the exhibits that you intend to introduce to support Count V of the Complain alleging negligent training and supervision. Attach all documents related to this interrogatory.

Ex. I. (Defs.' Irog. No. 18).  Plaintiff responded by referring to his Complaint, and to the recitation of the facts he provided in response to Interrogatories 9 and 12.  Ex. I (Pl.'s Irog. Responses).  Absent from Plaintiff's response is any evidence to support that the District knew or should have known that its employees were behaving in a dangerous or incompetent manner, and that, faced with this knowledge the District failed to conduct adequate supervision.  *Phelan*, 805 A.2d at 937-38, *Giles*, 487 A.2d at 613.

Additionally, Plaintiff has failed to proffer an expert to testify regarding the alleged failure on the part of the District to train or supervise its employees.  In order to prevail in any type of negligence claim, a plaintiff must establish the applicable standard of care, a deviation of that standard of care by the defendant, and that the defendant's deviation from the standard of care caused the plaintiff's injuries.  *Toy v. District of Columbia*, 549 A.2d 1, 6 (D.C. 1988).  In this case, Plaintiff must offer an expert to testify as to the standard of care because "[e]xpert testimony [is] required to prove the standard of care where it concerns a subject so related to some profession or occupation as to be beyond the realm of knowledge of an average lay person."  *Young v. District of Columbia,* 752 A.2d 138 (D.C. 2000), citing *District of Columbia v. Hampton*, 666 A.2d 30, 35 (D.C. 1995).

In cases alleging negligent police operations, supervision or training, courts have required expert testimony regarding the standard of care.  *See, e.g. Griggs v. WMATA*, 2002 U.S. Dist. LEXIS 18413 at *13-*14 (D.D.C. Sept. 30, 2002) (Urbina, J.), citing *District of Columbia v. Peters*, 527 A.2d 1269, 1273 (D.C. 1987) (requiring expert testimony for training of police regarding confrontation with people under the influence of narcotics); *District of Columbia v. White*, 442 A.2d 159, 164-65 (D.C. 1982) (requiring

expert testimony concerning adequacy of the MPD's weapons safety training); *Holder v. District of Columbia*, 700 A.2d 738, 741-42 (D.C. 1997) (stating that police use of force is an issue beyond the ken of the average juror); *see also Parker v. Grand Hyatt Hotel*, 124 F. Supp. 2d 79, 89-90 (D.D.C. 2000) (absent expert testimony regarding the standards of police training, the jury "would be forced to engage in idle speculation regarding the duty of care governing . . . the District of Columbia in the training of their employees, and such speculation on the part of a jury is not permissible.") (internal quotations and citations omitted).

Here, Plaintiff should be precluded from presenting his claim of negligent training and supervision to the jury as Plaintiff cannot proffer any evidence that the District had knowledge that any of its employees were acting in a purportedly dangerous manner, and as Plaintiff has not named an expert to testify regarding the standard of care applicable to the training and supervision of law enforcement officials.

### G. Plaintiff Should Be Precluded from Offering Evidence Regarding His Subsequent Hospitalization

Plaintiff should be precluded from offering any evidence regarding his subsequent hospitalization because it was not contemporaneous with the event in question, he has not designated an expert and because he has not provided any discovery related to his subsequent hospitalization. In his Complaint, Plaintiff asserts that he "began to suffer from chest pains, and was hospitalized at the Prince George's County Hospital Center." *See* Comp. ¶ 17. Plaintiff further asserts that he "remained hospitalized from December 26 through December 30, 2005." *Id.* Plaintiff alleges that he suffered "physical injury" as a result of the December 21, 2005 incident. Despite his allegations, Plaintiff failed to provide any discovery related to his "physical injury" and hospitalization. In Plaintiff's

deposition, he continually stated "everything's in the medical records."  Defendant has requested the underlying medical records; however, to date, none have been received.[7]  Without a medical expert and any medical records, Plaintiff cannot prove any "physical injury," and; therefore, should be precluded from offering evidence regarding his hospitalization.

Plaintiff should further be precluded from offering evidence regarding his subsequent hospitalization because he failed to designate an expert to distinguish his preexisting condition.  "[E]xpert testimony is required unless 'the causation can be resolved within the realm of ordinary human knowledge and experience.'"  *Williams v. Lucy Webb Hayes National Training School for Deaconesses and Missionaries*, 924 A.2d 1000, 1003 (D.C. 2007) quoting *Lasley v. Georgetown Univ*, 688 A.2d 1381, 1385 (D.C. 1997).  "In the absence of 'complicated medical questions,' the plaintiff's own testimony, without need for supporting expert medical testimony, will suffice to prove causation of injury."  *Williams v. Patterson*, 681 A.2d 1147, 1150 (D.C. 1996) (quoting *International Sec. Corp. of Va. V. McQueen*, 497 A.2d 1076, 1080 (D.C. 1985).  "[I]n cases presenting medically complicated questions due to multiple and/or preexisting causes . . . we have held that expert testimony is required on the issue of causation."  *Id*.

In his deposition, and answer to interrogatories, Plaintiff stated that he previously suffered from chest pain in 1998 and as a result had a cathetergram at Mercer Medical Hospital, in Trenton, New Jersey.  Without expert testimony and without *any* medical records[8] Plaintiff cannot explain to the jury whether or not his hospitalization on December 26, 2005, was a result of the December 21, 2005, incident or the result of a

---

[7] Defendant has received a bill from Prince George's Hospital Center.
[8] Any medical records would have to be explained by an expert for the jury as heart conditions are outside the scope of the lay person's knowledge.

preexisting condition.  *Id.*  Even if Plaintiff attempted to demonstrate that the December 21, 2005, incident "aggravated" his preexisting heart condition he would need an expert to "differentiate between a present medical condition and a preexisting one in evaluating the causal role of an intervening accident."  *Id*.  This is true because where an accident does not cause a diseased condition, but only aggravates the condition existing at the time of the accident, a party can only recover for such increased or augmented sufferings that were a direct result of the negligence.  *Id*.  (quoting *Baltimore & Ohio Railroad Co. v. Morgan*, 35 App. D.C. 195, 200 (1910).  *See Borger v. Conner*, 210 A.2d 546, 548 (D.C. 1965).

Plaintiff has stated that he has a preexisting heart condition, for which he was treated for in 1998; however, his failure to proffer an expert to differentiate between his present medical condition and any augmented suffering is fatal to his claim.  As a result, Plaintiff should not be permitted to put on evidence regarding his subsequent hospitalization.

### IV.    CONCLUSION

**WHEREFORE**, based on the foregoing, Defendants respectfully request that this court grant their Motion In Limine.

Dated this 27th day of August, 2008.

Respectfully submitted,

PETER J. NICKLES
Acting Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General, Civil Litigation Division

/s/ Toni Michelle Jackson
TONI MICHELLE JACKSON [453765]
Chief, General Litigation Section III

/s/ Vanessa E. Atterbeary
VANESSA E. ATTERBEARY [478070]
Assistant Attorney General
441 Fourth Street, N.W., Suite 6S-070
Washington, D.C. 20001
(202) 727-9624
(202) 727-3625 (fax)
Email: Vanessa.Atterbeary@dc.gov


/s/ Shana L. Frost
SHANA L. FROST [45802]
Assistant Attorney General
441 Fourth Street, N.W., 6th Floor South
Washington, D.C. 20001
(202) 727-9624
(202) 727-3625 (fax)
Email: Shana.Frost@dc.gov