# EXHIBIT # 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GEORGE JOHNSON,<br><br>    Plaintiff,<br><br>v.<br><br>SERGEANT BREDET WILLIAMS, *et al.*<br><br>    Defendants. | C.A. No. 06-1453 (RCL) |

## TRANSCRIPTION OF 911 CALL

**Dispatcher:** D.C. Emergency 911 Operator 6813. Do you need police, fire or an ambulance?

**Caller:** Ah- actually, I'm calling to report a, a car going northbound on 13th street.
*(Pause)*
Hello?

**Dispatcher:** Yes I'm here, what's going on with the car

**Caller:** Well it's a green –a- Ford Explorer and a- his like, his waving a pistol

**Dispatcher:** And this is on 13th and what?

**Caller:** Ah- 13th Decatur

**Dispatcher:** Decatur?

**Caller:** Yup

**Dispatcher:** Which way traveling north, which street is he on now?

**Caller:** On 13th street...
*(Pause, static)*
[Agna] [Mher]
Hello

**Dispatcher:** Yes sir I'm here, I hear you

Exhibit H

| | |
|---|---|
| **Caller:** | **(static) 5 8 M as in Mary** |
| | **3 6 beating up 13th street in green Ford Explorer** |
| Dispatcher: | You said his tag number 658 M as in Mary, what's the last 3? |
| **Caller:** | **037** |
| | *(Pause)* |
| Dispatcher: | You still see him sir? |
| **Caller:** | **No, I [cut] of** |
| Dispatcher: | Ok, alright we'll send the next available unit |
| **Caller:** | **Thank you** |
| Dispatcher: | You're welcome |
| | *(Engaged)* |

I, Treashal Kapadia, Legal Intern for the Office of the Attorney General for the District of Columbia, do hereby certify that the foregoing transcript is a true and correct transcription of the Metropolitan Police Department's recording of the December 21, 2005 911 call at issue in the above-captioned litigation.

_____
Treashal Kapadia

2

# EXHIBIT # 2

# GENERAL ORDER

| SERIES | NUMBER | EFFECTIVE DATE |
|---|---|---|
| 304 | 10 | July 1, 1973 |

DISTRIBUTION: A

ORIGINATING UNIT: OGC

**SUBJECT:** Police-Citizen Contacts, Stops and Frisks

The purpose of this order is to establish policies and procedures governing police-citizen "contacts," stops and frisks. Policies and procedures concerning arrests and searches connected with arrests are not covered. This order is intended to promote public safety and to safeguard members of the department from injury, while ensuring that invasions of personal privacy of members of the public will be held to a minimum. This order consists of the following parts:

    PART I    Responsibilities and Procedures for
               Members of the Department

            A.    Contacts.
            B.    Stops.
            C.    Frisks.
            D.    Record Keeping.

PART I

    A.    **Contacts.**

        Conduct by an officer which places the sworn member in face-to-face communication with an individual citizen under circumstances in which the citizen is free not to respond, and to leave, is considered a "contact." Contacts may be initiated by a officer when he/she reasonably believes that some investigatory inquiry into a situation is warranted. Since a contact involves solely the voluntary cooperativeness of a citizen who is free not to respond and to leave, the standard for a police-citizen contact does not require "probable cause," "reasonable suspicion," or any other specific indication of criminal activity. While an officer may initiate a contact for any legitimate, police-related purpose, contacts shall not be conducted in a hostile or aggressive manner, nor as a means of harassing any citizen or attempting to coerce a citizen to leave an area. Contacts shall not be initiated merely because a person is "hanging around," "loitering," or "standing on the corner," unless the overall circumstances are such as would reasonably arouse the curiosity, concern, or suspicion of the officer.

        1.    Initiating a Contact.

        An officer may initiate a contact with a person in any place in which the officer has a right to be. It is difficult to define precisely such places. Generally, they may include:

            a.    Areas of government-owned or possessed property normally open to members of the public;

            b.    Places intended for public use, or normally exposed to public view;

            c.    Places to which the officer has been admitted with the consent of the person empowered to give such consent;

-2-

    d.  Places to which the officer may be admitted pursuant to a court order (such as an arrest or search warrant);

    e.  Places where the circumstances require an immediate law enforcement presence to protect life, well-being, or property; and

    f.  Places in which the officer may effect a lawful warrantless arrest.

2.  Conduct of Contacts.

    a.  Persons "contacted" may not be detained in any manner against their will, nor frisked. They may not be required to answer the officer's questions or to respond in any way to the officer if they choose not to do so. The officer may not use force or coercion to require citizens to stop or to respond. Officers must constantly keep in mind that the distinction between a "contact" and a "stop" (Part I.B.) depends in large part on whether under the particular circumstances a citizen could reasonably perceive that he/she is not free to leave the officer's presence. Therefore, since the individual may, and is presumed to be innocent of wrongdoing of any kind, officers shall take special care to act in as a restrained and courteous manner as possible. Officers should avoid gruffness, short responses which could be misunderstood or requests that sound as commands. All verbal requests during the "contact" should be phrased with <u>optional</u> words such as "may," "would you mind," or words of similar import. The duration of a "contact" should be as brief as possible. Frequently, the success, or failure, in making a meaningful contact will depend upon the officer's ability to put citizens at ease and establish a rapport. If during a "contact" citizens should ask whether they must respond, or give the impression of feeling compelled to respond, the officer shall immediately inform them of their right to refuse as well as their right to leave.

    b.  Where citizens refuse, or cease to cooperate during a "contact," they <u>must</u> be permitted to go on their way, and the refusal to cooperate (or silence) cannot, itself, be used as the basis to escalate the encounter into a "stop" (Part I.B). However, if there has been a refusal to cooperate, or if the identification and general responses to questions are evasive (but not contradictory), the person(s) may be kept within visual sight, provided such visual observation appears to be an appropriate response under the total circumstances. Officers must bear in mind that citizens are not required to possess, or carry with them, any means of identification, nor, absent unusual circumstances, can citizens be required to account for their presence in a public place.

General Order No. 304.10

75

May-16-2007 10:25am From- Case 1:06-cv-01453-RCL   Document 27-2   Fax Filed 09/08/2008   Sep 3 2008 07:40pm P016/026 T-725 P.004/014 F-498

-3-

B. **Stops.**

A "stop" is the temporary detention of a person for the purpose of determining whether probable cause exists to arrest that person. A stop occurs whenever an officer uses his/her authority to compel a person to halt, remain in a certain place, or to perform some act (such as walking to a nearby location where the officer can use a radio or telephone). If a person is under a reasonable impression that he/she is not free to leave the officer's presence, a "stop" has occurred.

1. Basis for Stop.

If a member **reasonably suspects** that a person has committed, is committing, or is about to commit any crime, the officer has the authority to stop and detain that person for the purpose of determining whether or not probable cause exists to arrest. The officer may exercise that authority in any place in which he/she has a legal right to be.

2. Reasonable Suspicion.

The term "reasonable suspicion" is not capable of precise definition; it is more than a hunch or mere speculation on the part of the officer but less than the probable cause necessary to arrest. Reasonable suspicion is a combination of specific facts and circumstances which would justify a reasonable officer to believe that the person stopped had committed, was committing, or was about to commit a criminal act.

The following list contains some of the factors which may be considered in determining whether "reasonable suspicion" exists:

  a. Detained Person's Appearance:

  A person may generally fit the description of a person wanted for a known offense. The person may appear to be suffering from a recent injury, fatigued from running or overly nervous. The person may appear to be under the influence of alcohol or drugs, factors that might tie that person to an offense.

  b. Detained Person's Actions:

  A person may be fleeing from an actual or possible crime scene, hiding, or discarding possible items of evidence.

  c. Demeanor during a Contact:

  During a contact a person may respond to inquiries with evasive, suspicious, or incriminating replies or may be excessively tentative or nervous.

General Order No. 304.10
(Revised    9/24/85    )

-4-

d.  Area of the Stop:

The person may be in the area of a known offense soon after its commission or in an area known for the type of criminal activity on which the suspicion is based.

e.  Time of Day:

The time of day may be that during which criminal activity of the kind suspected usually occurs. It may, for instance, be a very late hour and it would be unusual for persons to be in a certain area.

f.  Police Training and Experience:

An officer may have experience in investigating a particular kind of criminal activity and recognize a person's conduct as consistent with a pattern or modus operandi generally followed in particular criminal offenses.

g.  Information obtained from witnesses or informants.

An investigating officer may base his/her suspicion upon information supplied by civilian witnesses or police informants who he/she deems to be reliable, either by virtue of their character or by information provided that has been corroborated by the officer.

h.  Information obtained from law enforcement sources:

(1) The officer may recognize an individual as having an arrest or conviction record or know of an individual by reputation. Coupled with certain circumstances, "reasonable suspicion" might be inferred.

(2) The officer may rely on reasonable suspicion developed by another officer, including one from another police agency, and on sources of police information such as lookouts, flyers, and teletype messages. A "stop" based on this type of information can be made, but the action will be judged against an objective standard: would the facts available to the officer at the moment of the stop lead a man of reasonable caution to conclude that the stop was appropriate. Thus, for example, to rely upon a flyer, it should contain the name and description of the suspect, the underlying offense, and the nature of the police action requested.

General Order No. 304.10
(Revised  9/24/85   )

-5-

    (3)  The officer may have other information that may tend to tie an individual to a crime that would justify a stop being made. For example, a person may occupy a wanted vehicle or be in a premise that is the target of a search warrant. In instances of this type, the officer shall effect a "stop" to determine if sufficient probable cause exists to make an arrest.

3.    Citing Justification for Stop.

Every officer conducting a stop must be prepared to cite the particular factors which supported the determination that "reasonable suspicion" was present. The record of the stop (P.D. Form 251 or P.D. Form 76) shall contain all factors relied on, whether or not they are specifically described in part 182.

    a.  Example 1: In the early morning hours, an officer on patrol receives a broadcast that a homicide has just occurred at a particular location. A general physical description of the suspect is given and he is said to be wearing a dark jacket. Soon afterwards, in the vicinity of the homicide, the officer observes a man generally fitting the physical description but not wearing a dark jacket. Under these circumstances a stop is proper and the officer's "reasonable suspicion" is justified based on the person's appearance, the area of the stop, and the type of crime under investigation.

    b.  Example 2: The police receive an anonymous tip that a named person is selling narcotics from his apartment in a specific building. The apartment manager confirms that the person resides there. Officers then occupy an apartment directly across the hall from the suspect, and observe a man previously arrested for a narcotics violation enter the apartment. When he exits shortly thereafter, officers "stop" him. Although probable cause to arrest and search does not exist, the "stop" is lawful because the officers' "reasonable suspicion" is justified as a result of the informant's tip and the officer's subsequent observations.

4.    Police Conduct during a Stop.

In determining whether a "stop" is reasonable and lawful, every phase must be conducted in a reasonable manner.

    a.  Duration of a Stop:

        (1)  A person stopped may be detained at or near the scene of the stop for a reasonable time not to exceed 10 minutes.

General Order No. 304.10
(Revised  9/24/85  )

81

-6-

    (2) Officers shall detain a person only for the length of time (not to exceed 10 minutes) necessary to obtain or verify the person's identification; to obtain an account of the person's presence or conduct, or otherwise determine if the person should be arrested.

  b. Explanation to Detained Person:

    (1) Officers shall act with as much restraint and courtesy as possible.

    (2) The officer shall identify himself/herself as a law enforcement officer as soon as practicable after making a stop.

    (3) At some point during the stop the officer shall, in every case, give the person an explanation of the purpose of the stop. The explanation need not be lengthy.

    (4) The record of the stop, (P.D. Form 251 or P.D. Form 76) shall briefly note the fact that the officer gave the person an explanation for the stop, and the nature of that explanation.

  c. Rights of Detained Person:

    (1) The officer may direct questions to the detained person for the purpose of obtaining their name, address, and an explanation concerning their presence and conduct.

    (2) The detained person shall not be compelled to answer questions or produce identification for examination by the officer.

  d. Effect of Refusal to Cooperate:

    Neither refusal to answer questions nor to produce identification by itself establishes probable cause to arrest. However, such refusal may be considered, along with other factors, as an element contributing to probable cause if, under the circumstances, an innocent person could reasonably be expected not to refuse.

5. Effecting a Stop and Detention.

    Officers shall use the least coercive means necessary to effect a stop. The least coercive means, depending on the circumstances, may be a verbal request, an order, or the use of physical force.

                                  General Order No. 304.10
                                    (Revised    9/24/85  )

-7-

6. Use of Physical Force.

   a. An officer may use only such force as is reasonably necessary to carry out the authority granted by this order.

   b. The amount of force shall not be such that it could cause death or serious bodily harm to the person stopped. This means that an officer may not <u>use</u> his/her service revolver or other service weapons to effect a stop and detention; this does not preclude a member from holding a service weapon at the time of the detention when circumstances dictate a need for such safety precautions.

   c. If the officer is attacked or circumstances exist that create probable cause to arrest, the officer may use the amount of force necessary to defend himself/herself or effect an arrest.

7. Stopping Witnesses Near the Scene of a Crime.

   a. An officer who reasonably believes that a person, observed near the scene of a crime that has just been committed, has knowledge of value to the investigation, may order that person to stop.

   b. The primary purpose of the brief stop authorized by this section is to obtain the witness' identification so that he/she may later be contacted by the department or the prosecutor (more extensive interviews with willing witnesses are, of course, authorized under the "contact" sections of this order).

   c. Officers shall use only the minimum amount of force necessary to stop a potential witness in order to obtain such identification; the amount of force shall not be such that it could cause death or serious bodily injury.

C. <u>Frisks</u>.

A frisk is a limited protective search for concealed weapons or dangerous instruments. Usually, it occurs during a "stop" and consists of a pat down of the individual's clothing to determine the presence of weapons and other dangerous objects.

   1. Basis for a Frisk.

   An officer may frisk a person (male or female) whom he/she has stopped if he/she <u>reasonably suspects</u> that the person is carrying a concealed weapon or dangerous instrument and that a frisk is necessary to protect himself/herself or others. The frisk may be conducted at any time during the stop, so long as the necessary "reasonable suspicion" has appeared.

General Order No. 304.10
(Revised   9/24/85  )

85

-8-

2. Reasonable Suspicion to Support a Frisk.

"Reasonable suspicion" to support a frisk is more than a vague hunch and less than probable cause. If, under the circumstances, a reasonably prudent law enforcement officer would be warranted in believing his/her safety or that of other persons is in danger because the individual may be carrying a weapon or dangerous instrument, a frisk is justified.

The following list contains some of the factors which may be considered in determining whether reasonable suspicion to support a frisk exists:

 a. Person's Appearance:

 A stopped person's clothes may bulge in a manner suggesting the presence of an object capable of inflicting injury. His/her physical characteristics, like demeanor, may suggest the possibility that the person may be carrying a weapon.

 b. Person's Actions:

 A stopped person may have made a furtive movement, as if to hide a weapon when approached. He/she may appear nervous during the course of the stop or may use threatening words or actions, justifying a frisk.

 c. Prior Knowledge:

 The officer may know that a stopped person has an arrest or conviction record for weapons or other potentially violent offenses, or a reputation in the community for carrying weapons or for aggressive behavior.

 d. Location of Incident:

 The area of the stop may be known for criminal activity or be so isolated that witnesses to an attack on the officer would be unlikely.

 e. Time of Day:

 A stop may occur at a time of day when an attack is more difficult to defend or more likely, such as during a period of darkness or during a time of day that is consistent with a serious/violent crime pattern.

General Order No. 304.10

-9-

f. Police Purpose:

The officer may reasonably suspect that the person stopped may have been involved, or is about to become involved in a serious/violent offense, especially an armed offense.

g. Companions:

A frisk may be necessary for safety reasons if the officer(s) has stopped a number of people at the same time, and the officer(s) on the scene is outnumbered by suspects. An officer may infer reasonable suspicion to frisk companions of a suspect who was frisked first and found to possess a weapon.

3. Citing Justification for Frisk.

a. Every officer conducting a frisk must be prepared to cite the specific factors which supported his/her determination that "reasonable suspicion" to support a frisk was present.

b. The record of the frisk, (P.D. Form 251) shall contain all factors relied on, whether or not they are specifically described in part IC2.

4. Frisk Procedure.

a. A frisk authorized under this order shall be limited to the seeking of possible weapons or dangerous instruments.

b. The authority to frisk shall not be used to conduct full searches designed to produce evidence or other incriminating material. Full searches of persons conducted without adequate probable cause to arrest are illegal and are specifically prohibited by this order.

c. Frisk procedures are as follows:

(1) If the person is carrying an item immediately separable from his/her person, such as a purse, shopping bag, or briefcase, it shall be taken from him.

(a) The officer shall not search inside the object, however, but shall place it at a safe distance out of the person's reach for the duration of the detention.

General Order No. 304.10
(Revised 9/24/85 )

-10-

    (b) If during the detention something occurs which makes the officer reasonably suspect the possibility of harm should he/she return an unsearched item without first inspecting it, he/she may briefly inspect the contents in order to determine if the item contains a weapon or other dangerous object.

    (c) The officer must be able to articulate the factors on which he relied in inspecting the contents of item, and shall note such factors on the record of the frisk required by part ID.

(2) The officer shall begin the frisk at the area of the person's body or clothing most likely to contain a concealed weapon or dangerous instrument and shall limit the frisk to a pat-down. Outer clothing, such as overcoats and jackets, may be opened to allow a pat-down directly on shirts and trousers, provided that the initial frisk of the outer clothing precludes a sufficient patting-down to determine adequately if a weapon is concealed under the outer clothing.

(3) The officer shall not reach inside the person's clothing or pockets during a frisk, unless the officer feels something that may reasonably constitute a weapon or dangerous instrument.

    (a) In such event, the officer may reach inside that portion of the person's clothing to uncover the article that was felt.

    (b) Although objects such as keys, change, envelopes, and other papers may be detected as a result of the frisk, an officer has no authority to require their removal prior to an arrest because they are not likely to constitute, or be used as, weapons or dangerous instruments.

(4) An officer may also take steps to secure those areas that the detained person could reasonably reach during the detention if the officer reasonably suspects that the person might obtain an object from such an area and attempt to harm the officer.

(5) If, during the course of a frisk, the officer feels an object and believes that it could be used to harm him/her or others, the officer may take whatever action is necessary to examine the object and to secure it for the duration of the detention.

                                      General Order No. 304.10

Example: While approaching a suspect, an officer observes him thrust his hand into his left front pants pocket, and withdraw it. The suspect is asked for identification, and says he has none. The officer runs his/her hand over the pants pocket and feels a soft lump. The officer's actions to this point are proper. However, if the officer then reaches into the pocket to recover the object, this action is improper, since the officer could not, from these facts, reasonably believe the soft lump was a dangerous weapon or instrument.

5. Discovery of Weapon Lawfully Possessed.

If a frisk discloses a weapon, the possession of which is licensed or otherwise lawful, the officer shall secure it out of the suspect's reach for the duration of the detention. Ammunition may be removed from any firearm, and the weapon and ammunition returned in a manner that ensures the officer's safety.

6. Discovery of Incriminating Evidence.

a. If, while conducting a frisk, an officer feels an object which he reasonably believes to be a weapon or dangerous instrument, he may reach into the pocket, waistband, etc., and remove that weapon.

(1) If, while in the process of removing what is believed to be a weapon, the officer discovers other items which are contraband, instrumentalities, or evidence of a crime, he may lawfully seized the items.

(2) These items may be considered in determining whether probable cause exists to arrest the person. If, as a result, an arrest is made, a full search of the person is proper.

b. Nothing in the preceding paragraph authorizes "searches" for incriminating evidence without probable cause. Officers shall at all times understand that the authority to "frisk" does not constitute authority to "search" and that full searches conducted without adequate probable cause to arrest are improper and prohibited.

7. Situations may occur where the officer possesses sufficient information from a citizen, informant, or otherwise, which simultaneously gives him/her a reasonable basis for a stop and a reasonable belief that the person to be stopped is armed.

a. In such a situation, a frisk is justified immediately upon confronting the individual.

General Order No. 304.10

-12-

    b.  If the officer reasonably believes he/she knows the location of the weapon, he/she may immediately reach inside the person's clothes or pockets to remove the weapon without conducting a "frisk."

        Example:  A police officer is informed by a citizen that a person is sitting in the front passenger seat of a specific automobile with a pistol in his waistband. The officer approaches the car and observes a person generally fitting the description sitting in the front seat passenger side. The officer immediately reaches into the waistband of the man's trousers and recovers a pistol. Whether or not the pistol was actually recovered, the officer's actions are proper.

D.  <u>Record Keeping.</u>

      Members of the force shall maintain records of all stops, frisks and may maintain records of other police-citizen contacts, consistent with the following rules. Such records serve to ensure the proper exercise of law enforcement authority and enhance an officer's ability to reconstruct at a later time events which occurred before and during such an incident.

    1.  Forcible Stops and Frisks.

        Whenever any force is used to stop a person pursuant to part IB of this order, or whenever any frisk is conducted pursuant to part IC, regardless of whether or not an arrest follows, a PD Form 251 shall be made containing all pertinent details of the incident, including all factors relied upon in determining that the stop or frisk was justified.

    2.  Non-Forcible Stops.

        Whenever a person is stopped without the use of force, the stop shall be recorded on a PD Form 76, which shall contain all pertinent details of the incident including all factors relied upon in determining that the stop was justified. The PD Form 76 shall be forwarded by the reporting officer to his/her commanding officer.

    3.  Contacts.

        Contacts are optional unless required by the commanding officer. Officers are reminded, that use of the P.D. Form 76 during a contact may be interpreted as coercive by some citizens. Consequently, if a determination is made before or during a contact to record information, the citizen should promptly be informed that the P.D. Form 76 is strictly for internal use by this department and is not available to the public and does not signify or imply an arrest circumstance or involvement in criminal activity.

                                                                     General Order No. 304.10
                                                                     (Revised 7-14-83  )

-13-

4. Review and Maintenance of Records.

a. Whenever a PD Form 76 is prepared, the officer shall clearly indicate whether the incident was a non-forcible stop, or a contact; the statement of facts shall be consistent with the type of encounter initiated. Sergeants shall review all PD Forms 76 for conformity with this order and shall take appropriate corrective action as necessary.

b. Commanding Officers shall ensure that all P.D. Forms 76 are centrally collected and maintained within the respective district, or organizational element, and that an official is designated to monitor on an interval basis the P.D. Form 76 file. Access to the P.D. Form 76 file, of course, is to be restricted to direct law enforcement uses only, and any accessing by sworn personnel not normally charged with, or responsible for, investigations shall be challenged.

c. P.D. Forms 76 shall be minimally maintained for two (2) years from the date of their execution, and may be retained for additional time periods when there is a determined, or perceived need. However, at the termination of the two 2-year retention period, or at such a period of time when all perceived or determined use has lapsed, the commanding officer shall ensure that the discarded P.D. Forms 76 are actually destroyed.

5. Use of Such Records.

a. Records made pursuant to this order may be used only for a bona-fide law enforcement purpose or for defense in civil or administrative actions brought against a member of the department or the department itself.

b. Such records may not be disseminated to persons or agencies outside this department except with the expressed approval of an official of the rank of lieutenant or above.

*Maurice T. Turner, Jr.*
Maurice T. Turner, Jr.
Chief of Police

MTT:MFB:jtw

General Order No. 304.10
(Revised 7-14-83)

97