UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GEORGE JOHNSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 06-01453 (RCL) |
| ) | |
| SERGEANT BREDET WILLIAMS, ) | |
| *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION**

This matter came before the Court for a continued pretrial conference, at which the Court heard argument on defendants' pretrial Motion [24] *in Limine*. Defendants argue that, discovery having concluded, plaintiff has not produced evidence that would allow a reasonable jury to find for plaintiff on any of his claims. The Court agrees, and plaintiff shall be precluded from presenting all five of his alleged counts to the jury.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

Shortly after 1:00 a.m. on December 21, 2005, someone called D.C. Emergency 911 and reported seeing a driver "waving a pistol." (Pl.'s Mot. Ex. 3 ("Transcription of 911 Call") [hereinafter "911 Transcript"]; "Chronology of Events" (filed Sept. 4, 2008).) The caller described the driver's vehicle and location. (911 Transcript.) The caller was not asked for, and did not give, his or her name. (*Id.*) The 911 system, which normally logs the number from

which the call originated, was unable to obtain a number for this call. (Chronology of Events.) 911 then sent a "dispatch" via radio to patrol officers, advising them that a 911 call had reported a man waving a gun and giving the reported vehicle description and location. (Tape Recording of 911 Call and Police Dispatch, Side A, at approx. 7 min. 30 sec. (filed Sept. 4, 2008).) The dispatch did not mention the anonymity of the 911 caller. (*Id.*) Shortly after receiving the dispatch, Sergeant Bredet Williams and other officers stopped plaintiff's vehicle, which appeared to match the vehicle described in the dispatch. Plaintiff alleges that the officers shouted at him and his passenger, with guns drawn, and ordered them out of the vehicle. (Opp'n Ex. #4 at 3 (Pl.'s Answers to Def.'s Interrogs.).) The officers then searched plaintiff's vehicle with plaintiff's consent; no gun was found. (*Id.*) Officers then returned to their cruiser to run checks on plaintiff's and his passenger's identifications. (*Id.*) When the officers returned from their cruiser, plaintiff asked why he had been stopped. (*Id.*) The officers told plaintiff that the stop was the result of an anonymous 911 call. (*Id.*)

      Plaintiff is suing the officers under 42 U.S.C. § 1983, alleging illegal seizure and excessive use of force in violation of the Fourth Amendment. Plaintiff includes defendant District of Columbia in those § 1983 claims on the theory that the District had a custom or policy of allowing its officers to commit such violations. Plaintiff alleges that the officers assaulted and falsely imprisoned him. Finally, plaintiff alleges that the District's negligent training and supervision of its officers caused him physical and emotional injury.

## II. ANALYSIS

A.  **Defendants' Motion *in Limine* Is Procedurally Appropriate**

Plaintiff maintains that defendants' motion *in limine* is procedurally inappropriate because if granted in full it would function as a dispositive motion, preventing plaintiff from presenting any of his claims to a jury. Although plaintiff may be correct as to the effect, that does not make defendants' motion *in limine* inappropriate. The Court has pretrial authority to preclude claims that are unsupported by evidence from reaching the jury. Here, defendant argues that each of plaintiff's claims lacks evidentiary support such that no reasonable jury could find in plaintiff's favor. If defendant is correct, then the Court can and should preclude plaintiff from presenting them to the jury. Thus, the Court will evaluate defendants' motion *in limine* based on that standard: whether, for each claim, plaintiff offers evidence such that a reasonable jury could find in plaintiff's favor.

B.  **Plaintiff Has No Evidence Showing That the Officers Are Not Entitled to Qualified Immunity From § 1983 Claims**

Because plaintiff has not offered evidence that would allow a reasonable jury to find that the defendant officers are not entitled to qualified immunity, plaintiff will be precluded from presenting his § 1983 claims against officers to the jury. The qualified immunity inquiry involves two steps. Step 1 asks, "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If the answer is "yes," then the process continues to Step 2, which asks "whether that right was clearly established" at the time of alleged violation. *Id.* For

Step 2, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202. Step 2 "must be undertaken in light of the specific context of the case," *id.* at 201, and as such does not require that the facts be taken as alleged (unlike Step 1). The Supreme Court requires that these two analytical steps be performed in sequence, explaining its reasoning:

> In the course of determining whether a constitutional right was violated on the premises alleged, a court might find it necessary to set forth principles which will become the basis for a holding that a right is clearly established. This is the process for the law's elaboration from case to case, and it is one reason for our insisting upon turning to the existence or nonexistence of a constitutional right as the first inquiry. The law might be deprived of this explanation were a court simply to skip ahead to the question whether the law clearly established that the officer's conduct was unlawful in the circumstances of the case.

*Id.* at 201. The question of qualified immunity should generally be resolved as early as possible, *id.*, but it can also be resolved after discovery (as was the case in *Saucier*, which involved a motion for summary judgment).

### 1.      Qualified Immunity From Unlawful Seizure Claim

Plaintiff argues that by stopping plaintiff's car on the basis of an anonymous tip, Sergeant Williams and the other officers violated plaintiff's Fourth Amendment right against unreasonable seizure. Plaintiff relies on *Florida v. J.L.*, 529 U.S. 266 (2000), in which the Supreme Court held that an anonymous tip that a person is carrying a gun is, without more, insufficient to justify a police stop-and-frisk.[1] The District advances two independent rationales for police reliance on

---

[1] *Terry v. Ohio*, 392 U.S. 1 (1968), established that an "officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlaw*, 528 U.S. 119, 123 (2000) (citing *Terry*, 392 U.S. at 30).

the anonymous tip. First, the District claims that the tip included indicia of reliability—namely, the vehicle's location, description, and license plate number—that justified reliance despite the tipster's anonymity. Alternatively, the District argues that this was a case of ongoing emergency and is thereby distinguishable from *J.L.* The Court is unpersuaded by those rationales and concludes that the police conduct alleged by plaintiff was unconstitutional under *J.L.* However, the officers are nonetheless entitled to qualified immunity. A reasonable officer in the situation would not have known that the stop was unlawful, for two reasons. First, the case law at the time did not clearly indicate that it was unconstitutional to make a stop based on an anonymous tip of a man waving a pistol. Second, because the officers did not know at the time of the stop that the tip was anonymous, they had no reason to know that *J.L.* even applied.

As a preliminary matter, the Court notes that this is most certainly an "anonymous" call. The District argues that the caller's location was known, because the caller seemed to be on location while describing the vehicle at 13th and Decatur. That the caller was located at 13th and Decatur is a possible inference, but not a necessary one. This case is distinguishable from other cases where details about the "anonymous" tipster were known. *See, e.g.*, *U.S. v. Torres*, 534 F.3d 207 (3d Cir. 2008) (911 caller gave a description and company name of his own taxicab, and offered to continue following the subject); *U.S. v. Valentine*, 232 F.3d 350 (3d Cir. 2000) ("anonymous" tip was made to officer face-to-face).

Again, the first question the Court must ask when assessing qualified immunity is whether, based on the facts alleged, the officers' conduct violated a constitutional right. In *J.L.*, an anonymous informant called the police station to report a man possessing a concealed firearm. The caller described a young black man wearing a plaid shirt standing at a bus stop. *J.L.*, 529

U.S. at 268. When police stopped and frisked a fifteen-year-old matching that description, they found a gun. *Id.* at 269. The Supreme Court held that the stop-and-frisk, based "solely [on] a call made from an unknown location by an unknown caller," 529 U.S. at 270, violated the Fourth Amendment. The Court concludes that, under *J.L.*, the facts alleged by plaintiff here constitute a Fourth Amendment violation.[2]

The District attempts to distinguish the present case from *J.L.* by arguing that there are more "indicia of reliability" here than in *J.L.* The sufficiency of indicia of reliability should be evaluated considering the "totality of the circumstances." *U.S. v. Cortez*, 449 U.S. 411, 417 (1981). The District points to the description of the vehicle and the license plate number, both of which closely fit plaintiff's vehicle. (Pl.'s Mot. 11–12.) At oral argument, the District argued that those details were far more reliable than the details given in *J.L.* because in *J.L.* there could have been several black men wearing plaid shirts standing at that bus stop, while the vehicle description and location here could only match one vehicle. But that argument ignores the

---

[2]The Court opines on the underlying constitutionality of the stop not because it affects the qualified-immunity conclusion—it does not—but because *Saucier* mandates it. *Saucier*'s order that courts delineate constitutional rights that have little effect on the qualified-immunity conclusion has garnered its share of criticism. *See, e.g.*, *Scott v. Harris*, 127 S. Ct. 1769, 1780 (2007) (Breyer, J., concurring) ("[L]ower courts should be free to decide the two questions in whatever order makes sense in the context of a particular case."); *Brosseau v. Haugen*, 543 U.S. 194, 201 (2004) (Breyer, J., joined by Scalia and Ginsburg, JJ., concurring) ("I am concerned that the current rule rigidly requires courts unnecessarily to decide difficult constitutional questions when there is available an easier basis for the decision (e.g., qualified immunity) that will satisfactorily resolve the case before the court."); *Pearson v. Callahan*, No. 07-751, Tr. of Oral Arg. 36 (Oct. 14, 2008) (Roberts, C.J.) ("[I]n my experience [as an appeals court judge] it was unworkable, or at least frustrating, . . . that we had to decide not just a factual question but a constitutional question in a context where it wasn't necessary."); Leval, Pierre N., *Judging Under the Constitution: Dicta About Dicta*, 81 N.Y.U. L. Rev. 1249, 1277 (2006) ("[T]he Supreme Court now *requires* that courts glibly announce new constitutional rights in dictum that will have no effect whatsoever on the case. The practice will inevitably produce bad constitutional law.") (citation omitted).

language of *J.L.*: "An accurate description of a subject's readily observable location and appearance . . . . does not show that the tipster has knowledge of concealed criminal activity." 529 U.S. at 272. Even a detailed description of a suspect's location and appearance does not provide indicia of reliability sufficient to justify a stop based on an anonymous tip. Furthermore, the tipster gave no identifying information and was calling from a blocked number. Considering the totality of the circumstances, there was not sufficient indicia of reliability to stop plaintiff based on this tip.

The District also tries to distinguish the current case as an ongoing emergency. *J.L.* left open the possibility that, in cases of ongoing emergency, anonymous tips might be relied upon. *J.L.*, 529 U.S. at 273 ("The facts of this case do not require us to speculate about the circumstances under which the danger alleged in an anonymous tip might be so great as to justify a search even without a showing of reliability."). A number of Circuits have since seized on that language, holding that anonymous tips could be relied upon in various types of ongoing emergencies. *See U.S. v. Hicks*, 531 F.3d 555 (7th Cir. 2008) (911 caller, giving two different names, reporting "a man beating up a woman"); *U.S. v. Holloway*, 290 F.3d 1331 (11th Cir. 2002) (911 caller reporting gunshots and arguing emanating from a residence); *Anthony v. City of N.Y.*, 339 F.3d 129 (2d Cir. 2003) (911 caller reporting that her husband beat her and had a knife and a gun); *U.S. v. Brown*, 496 F.3d 1070 (10th Cir. 2007) (911 caller reporting that a woman was being held hostage by an armed man); *U.S. v. Elston*, 479 F.3d 314 (4th Cir. 2007) (self-identified 911 caller, who did not want her name given to police, reporting a drunk driver carrying loaded gun and threatening to shoot someone). The 911 call in the current case—reporting a man "waving a pistol"—certainly indicates a more serious danger than the call

in *J.L.*, which only reported concealed possession of a firearm.[3]  However, the caller did not report that the driver had threatened anyone or even pointed the weapon at anyone.  The Court does not read *J.L.*—or subsequent decisions from other Circuits—as endorsing reliance on anonymous tips in this situation.  Accordingly, the Court concludes that the facts alleged by plaintiff describe a violation of plaintiff's Fourth Amendment right against unreasonable search and seizure.

The analysis now advances to *Saucier*'s Step 2, which asks whether the right was clearly established at the time of the violation—or, put another way, whether it would have been clear to a reasonable officer in the situation that his conduct was unlawful.  *Saucier*, 533 U.S. at 201–02.  The Court concludes that a reasonable officer in this situation would not have known that the stop was unlawful, for two independent reasons.  First, as outlined above, the limits of the "ongoing emergency" exception to *J.L.* are murky at best.  A reasonable officer, having read *J.L.*, could conclude that an anonymous 911 call reporting a man waving a pistol presented a significant enough risk to justify a stop.  The Court here resolves the constitutional question differently, but law enforcement officers cannot be expected to accurately predict developments in the courts.  "If the officer's mistake as to what the law requires is reasonable, the officer is entitled to the immunity defense." *Saucier*, 533 U.S. at 205.

In this case, however, even if the law on anonymous stops *had* been clearly established,

---

[3]Possession of a handgun was illegal in the District of Columbia at the time of the stop, but mere illegal activity does not constitute an emergency in this context.  *See J.L.*, 529 U.S. at 273 n.* (describing the irrelevance of a Florida law making it illegal for persons under the age of 21 to carry concealed firearms) ("The mere fact that a tip, if true, would describe illegal activity does not mean that the police may make a *Terry* stop without meeting the reliability requirement, and the fact that J.L. was under 21 in no way made the gun tip more reliable than if he had been an adult.").

the officers would still be entitled to immunity because the uncontroverted evidence shows that they did not know the tip was anonymous at the time of the stop.[4] The tape of the 911 call and subsequent dispatches indicates that, at the time of the stop, the officers did not know that the tip was anonymous.[5] Plaintiff's interrogatory response does not contradict that position.[6] Because

---

[4]Plaintiff alleges—but does not prove—that the officers knew the tip was anonymous at the time of the stop. In Step 1, *Saucier* required the Court to consider the facts alleged by plaintiff, because "doing so permits courts in appropriate cases to elaborate the constitutional right with greater degrees of specificity." *Saucier*, 533 U.S. at 207. There is no such restriction for Step 2; rather, Step 2 "evaluate[s] for objective reasonableness based upon the information the officers had when the conduct occurred." *Id.* It is therefore appropriate for Step 2 to take into account the uncontroverted evidence available at the conclusion of discovery.

[5]The recording begins with the 911 call. The rest of the tape—two 30-minute sides—appears to be a series of subsequent exchanges between a 911 dispatcher and patrolling police officers. These exchanges include both communications related to this case and communications regarding other police matters. The dispatch informing officers of the 911 call and the vehicle's description and location did not address the call's origin. (Tape Recording of 911 Call and Police Dispatch, Side A, at approx. 7 min. 30 sec. (filed Sept. 4, 2008).) A few minutes later in the tape, officers reported stopping plaintiff's vehicle. (*Id.* at approx. 10 min. (reporting a stop at "Piney Branch and Georgia," the location at which plaintiff's vehicle was stopped).) The officer reporting the stop said that there were "plenty of units," and that the situation was "under control." (*Id.*) The next relevant exchange—occurring after the officers report the stop—is an officer asking what phone number the 911 call came from; the dispatcher responded that there was "no call-back" number. (*Id.* at approx. 11 min.) Then a female officer identifying herself as "420"—presumably Sergeant Williams—asks, in an irritated voice, where the 911 call came from. (*Id.* at approx. 11 min. 10 sec.) The 911 dispatcher answers that the call was a "concerned citizen, no call-back." The officer followed up, asking other officers to go to the original location mentioned in the 911 call to look for victims. (*Id.*) No witnesses or victims were found at that location. (*Id.* at approx. 13 min. 45 sec.)
  The reverse side of the tape includes a separate exchange wherein officer "420" receives confirmation of the license plate reported by the 911 caller. (*Id.*, Side B, at approx. 2 min. 5 sec.) The anonymity of the call is not addressed. (*Id.*) The Court is unsure how this exchange fits into the overall timeline of events, but because the caller's anonymity is not addressed the exchange is not relevant.

[6]According to plaintiff's narrative of events, he asked the police why he was being stopped after the police officers had searched his vehicle and found no gun. (Opp'n Ex. #4 at 3.) Only then—after the police had ample opportunity and motivation to inquire as to the nature of the tip—does plaintiff say the officers told him he was stopped on the basis of an anonymous tip.

9

the officers did not know that the tip was anonymous at the time they stopped plaintiff, they could not have known that *J.L.* was even relevant. *See Feathers v. Aey*, 319 F.3d 843, 848–51 (6th Cir. 2003) (reaching the same conclusion under similar facts). Furthermore, it was reasonable for the officers to assume that the tip was not anonymous when it came over the dispatch. The D.C. 911 system logs the originating numbers of all 911 calls, so the officers could have reasonably assumed that at least some identifying information was available.

Plaintiff has not produced any evidence casting doubt on the officers' qualified immunity. Accordingly, plaintiff is precluded from presenting his unlawful seizure claims against the officers to the jury.

### 2. Qualified Immunity From Excessive Force Claim

The officers are entitled to qualified immunity from plaintiff's claim of excessive force. As for *Saucier* Step 1, the facts alleged by the plaintiff do *not* show that a constitutional right has been violated. Courts have "long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396 (1989). Based on the facts alleged by plaintiff—which are bereft of any physical contact whatsoever—no reasonable jury could find that plaintiff's Fourth Amendment right was violated. *Cf. Johnson v. Dist. of Columbia*, 528 F.3d 969, 974–75 (D.C. Cir. 2008) (determining that, where police ordered at gunpoint a suspect of unknown dangerousness to lie face-down and spread his arms and legs, a constitutional right was only violated when the suspect was repeatedly kicked in the groin). Plaintiff does not even address the issue in his opposition to defendants' motion *in limine*. Because the officers' alleged

---

(*Id.*)

actions do not amount to a constitutional violation, the Court does not reach Step 2 of the qualified-immunity analysis and plaintiff will be precluded from presenting his claim of excessive force to the jury.

C.   **Section 1983 Claims Against District are Unsupported by Evidence**

Plaintiff's § 1983 claims for unlawful seizure and use of excessive force extend to the District of Columbia as well. Local governments can be held liable for § 1983 violations if "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [government] officers." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). Governments may also be held liable "for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Id.* at 690–91.

Plaintiff claims that the District's "General Order" on "Stop & Frisks," which does not mention the anonymous-tips ruling in *J.L.*, serves as evidence that the District had a "custom" of unconstitutional stops based on anonymous tips. (The District counterargues that its training program extends far beyond what is contained in the General Order.) However, even if plaintiff is correct about the policy's unconstitutionality, plaintiff offers no evidence showing that the policy caused his injury. For the District to be liable, there must be a connection between the District's policy or custom and plaintiff's injury. *See Okla. City v. Tuttle*, 471 U.S. 808, 823 (1985) ("At the very least there must be an affirmative link between the policy and the particular constitutional violation alleged."). Because the officers did not know that the tip was anonymous

at the time they stopped plaintiff, any harm suffered by plaintiff cannot have been caused by the District's alleged failure to train on *J.L.* Moreover, even if the officers *had* known the tip was anonymous and *had* been fully trained on *J.L.*, they could still have reasonably stopped plaintiff. As explained above in connection with the officers' § 1983 liability, at the time of the stop it was not clearly established, even after *J.L.*, that making a stop based on an anonymous tip about a man waving a pistol was unconstitutional. This opinion establishes that law, of course, but the law was unclear at the time of the stop. So, again, the District's alleged policy of ignoring *J.L.* cannot have caused plaintiff's injury.

In a related point, any unconstitutional policy regarding the District's *dispatchers* also cannot be said to have caused plaintiff's injury. It is indisputable that the 911 dispatcher *should* have informed the police that the tip was anonymous; *J.L.* cannot be read any other way. But, again, the 911 dispatcher's error (and any related custom or policy by the District) did not *cause* plaintiff's injury; because the law was unclear, a reasonable officer could have known that the tip was anonymous and still decided to stop plaintiff's vehicle. So the District could not be held liable in this case for any unconstitutional dispatcher policy. However, as an aside, the Court emphasizes how dumbfounded it is that, in the wake of *J.L.*, any well-trained dispatcher could fail to recognize the potential importance of the tip's anonymity. Had the Fourth Amendment law been more clearly established at the time of the stop, plaintiff would likely be able to make a case for District liability based on its 911 operator/dispatcher policy. The District has "dodged a bullet" here and would be well-advised to ensure that its 911 operators and dispatchers respond appropriately in the future.

Plaintiff offers no proof of any other unconstitutional policy or custom. Accordingly,

because plaintiff offers no evidence to show the District's § 1983 liability, plaintiff is precluded from presenting those claims to the jury.

**D.     Claim Against Officers for False Imprisonment is Unsupported by Evidence**

Plaintiff has presented no evidence that he was falsely imprisoned.  Under D.C. common law, a legal police stop for investigatory purposes does not constitute imprisonment.  *See Cotton v. Dist. of Columbia*, 541 F. Supp. 2d 195, 205 (D.D.C. 2008) (concluding that police handcuffing a suspect and sitting her down was not false imprisonment).  Plaintiff has not shown that this was anything more than an investigatory stop.  The officers stopped plaintiff based on the 911 dispatch describing a similar vehicle and location and released him after the investigation yielded no criminal activity.  Because plaintiff has not presented evidence to support his claim of false imprisonment, he is precluded from presenting the claim to the jury.

**E.     Claim Against Officers for Assault is Unsupported by Evidence**

Plaintiff has not offered evidence supporting his claim of assault.  In the District of Columbia, "[a] police officer has a qualified privilege to use reasonable force to effect an arrest, provided that the means employed are not in excess of those which the actor reasonably believes to be necessary."  *Etheredge v. Dist. of Columbia*, 635 A.2d 908, 916 (D.C. 1993) (internal quotations and citations omitted).  "The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight . . . ."  *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 396–97 (1989)).  Plaintiff has offered no evidence suggesting that the officers used any more force that a

reasonable officer on the scene would have used. The 911 dispatch indicated that the driver of the vehicle was armed. The officers acted reasonably in securing adequate backup and ordering plaintiff and his passenger out of the vehicle with weapons drawn. Because plaintiff has not presented evidence that would allow a reasonable jury to find for him on his assault claim, he is precluded from presenting the claim to a jury.

### F.     Claim Against District for Negligent Training and Supervision is Unsupported by Evidence

Plaintiff asserts a separate claim alleging that the District was negligent in training and supervising its officers, resulting in plaintiff's being subject to wrongful seizure and excessive force. This claim fails for the same reasons as plaintiff's § 1983 claim against the District: plaintiff does not identify a causal connection between a deficiency in the District's police training or supervision and his injury. The District's alleged failure to train its officers cannot have caused plaintiff's injury, for two reasons. First, the officers did not know that the tip was anonymous. Second, even if they had known of the tip's anonymity, the law was unclear enough at the time that the officers could have reasonably made the stop. Neither could any failure to train the District's 911 dispatchers have caused the injury. Again, even if the dispatcher had told the officers that the tip was anonymous, the officers could still have reasonably made the stop. Plaintiff has not specifically alleged any other deficiencies in the District's training or supervision, nor has he proffered evidence thereof. Accordingly, as with plaintiff's other claims, plaintiff is precluded from presenting his claim of negligent training and supervision to the jury.

## III.  CONCLUSION

At the close of discovery, plaintiff has not proffered information for any of his claims that would allow a reasonable jury to find in his favor.  Defendants' motion *in limine* shall be granted, and plaintiff shall be precluded from presenting those claims to the jury.

A separate order shall issue this date.


Signed by Royce C. Lamberth, Chief Judge, on November 3, 2008.